Carter and Davies, Assignees, *v.* Bishop & Co. *et als.*, Mortgagees.

## SUPREME COURT—IN BANCO.

*Hartwell and Widemann, J. J.*

H. A. P. CARTER AND T. H. DAVIES, ASSIGNEES OF C. N. SPENCER & Co., *vs.* C. R. BISHOP & Co., AND L. B. GREEN, MORTGAGEES.

The REGISTRY WITH THE COLLECTOR OF CUSTOMS of the MORTGAGE OF A SHIP is sufficient without recording at the Registrar of Conveyances.

PART-OWNERS or SHIP'S HUSBANDS have no LIEN for advances.

Case submitted as follows :

1. The Hawaiian schooner *Pauahi*, then owned as to one-half thereof by William Babcock, and one-fourth thereof by Henry Macfarlane, and one-fourth thereof by Lucretia B. Green, Hawaiian citizens, was duly registered in the Custom House of Honolulu, on the 10th day of June, 1869.

2. The one-fourth of the Hawaiian schooner called the *Pauahi*, was, on the 10th day of June, owned by C. N. Spencer & Co., and the legal title to said one-fourth share stood in the name of Henry Macfarlane, (one of the members of said firm engaged in mercantile business in Honolulu,) as appears by the certificate of the registry of said schooner, in the record of the Custom House at Honolulu.

3. The said William Babcock and the said C. N. Spencer & Co., on the 5th of June, 1869, executed a mortgage of their said three-fourths shares of the said schooner to the banking firm of Bishop & Co., of Honolulu, to secure their promissory note of the same date, for the sum of Four Thousand Dollars, borrowed by them from the said Bishop & Co., which mortgage was received for record, June 11th, 1869, at 3h. 30' o'clock P. M., and recorded on pages 344, 345, Book B, of

transfer of Hawaiian vessels, by W. F. Allen, Collector General of Customs, at the Custom House, in Honolulu, Hawaiian Islands, and which sum of money, so borrowed and secured by mortgage, the said mortgagees claim to have formed part of the original purchase money of said schooner.

4. The said Lucretia B. Green bargained and sold all her said one-fourth share in the said schooner to the said Henry Macfarlane by bills of sale dated the 8th of January, 1870, in consideration of $2,500, free and discharged of all claims against her share, except the sum of $500; that at that date the said one-fourth share of said schooner was owned by C. N. Spencer & Co., and the legal title stood in Henry Macfarlane, one of the members of said firm, as appears by the bill of sale recorded in the Custom House at Honolulu, on the 10th day of January, 1870.

5. That for the said purchase money,—$2,500,—the said Henry Macfarlane, on the 8th day of January, 1870, executed a mortgage back to Lucretia B. Green, of one-fourth share in said vessel, to secure the payment of two promissory notes, drawn by C. N. Spencer & Co., of which firm the said Henry Macfarlane was a member, for $1,250 each, payable in three and six months after the date 1st January, 1870, with interest at 1 per cent. per month, and that the sum of $500 was indorsed on one of the said notes : "Received on account of the within note $500; same being indebtedness of Mrs. Green ¼th interest to date,". and that said mortgage was received for record, January 10th, 1870, at 12h. 10' P. M., and recorded on pages 375, 376, Book B, transfer of Hawaiian vessels, at the Custom House in Honolulu.

6. The said firm of C. N. Spencer & Co., by deed dated 12th day of February, 1870, assigned and made over all their estate, property, and effects, including their said interest in the said Hawaiian schooner to Theo. H. Davies and H. A. P. Carter, in trust for themselves, and the other creditors of the said firm, and which was duly recorded in the office of the Registrar of Conveyances.

Carter and Davies, Assignees, *v.* Bishop & Co. *et al.*, Mortgagees.

7. From the time of the purchase of the said schooner *Pauahi*, until January 1st, 1870, the said firm of C. N. Spencer & Co. acted as agents or ship's husbands for the said schooner, and at the date of the said assignment, a balance of $2,614.72 stood to the debit of the said schooner, on the books of the said firm, which the said assignees claim to be a lien on the said schooner, in priority to the said mortgagees, who claim to hold the first lien on the said schooner, and deny that C. N. Spencer & Co., as part owners, and agents and ship's husbands, or their assignees, have, or are entitled to, a lien on the said schooner. And the said mortgagees traverse the accounts of the said C. N. Spencer & Co., agents and ship's husbands, and deny that the above debit, so standing on their books at the date of their assignment, is a true one.

8. On the part of the said assignees and creditors, it is also alleged that the said mortgages are void at law, as against the creditors of said firm, by reason of their not having been recorded in the office of the Registrar of Conveyances, in accordance with Chapter 26, Article 51, of the Civil Code of this kingdom ; but which is controverted by the said mortgagees, who allege that their said mortgages are valid and effectual, as the said instruments were duly deposited with the Collector General of Customs, and by him duly recorded within three days after their execution and delivery, in accordance with the provisions of Chapter 9, Article 24, of the Civil Code of this kingdom.

J. MONTGOMERY FOR THE ASSIGNEES.

The purposes and effects of registry with the Collector appear in Sections 637 and 641, viz. : to give the transferee the rights of the original owner, but this statute does not supersede the necessity of recording with the Registrar, as provided in Section 1263. The English and American statutes provide expressly that registry with the Collector shall be

valid against *all parties*, and further provide details for re-
cording and furnishing copies of records; all of which is
omitted in our statute, which is conclusive evidence that the
Legislature never intended to except vessels from Section
1263. It can not be contended that a ship is not a chattel—
the word used in the statute. Smith's Merc. Law, p. 238.

The creditors are *third parties*, affected by illegal registry.
If there has been ignorance of the law, concerning these
records, on the part of the community, that shall not affect
legal rights. Spencer & Co.'s advances are protected by a
lien upon the ship, as held by Lord Chancellor Hardwicke,
in Poddington *vs.* Hallett, 1 Ves., 197. See, also, 1 Bell's
Comm., 505, and Abbott on Shipping, p. 142; Story's Partn.,
§ 440, *et seq.* Parsons says the authorities on this point are
irreconcilable. Pars. Partn., p. 563. Such being the case,
this Court is free to adopt the principle most conducive to
the rights of parties, and to public policy, under Section 823
of our Code.

The employment of the schooner by the owners, for their
mutual benefit, constitutes a partnership, and the advances of
one partner in carrying on the joint business, are a lien on
the partnership stock. Coll. Partn., p. 109.

Story says the assignees of a bankrupt partner take only
his rights in the surplus remaining, after the payment of joint
debts, including liens held by solvent partners. Story's
Partn., § 361; Coll. do., § 135; 3 Kent's Comm., 37. The
converse may be applied. If Babcock, the half owner, were
bankrupt, and Spencer & Co. solvent, the latter would have
a clear right to have from Babcock's share one half of their
advances, over all other claims. The mortgagees take the
mortgagors' interests, subject to liens. Opportunity for fraud
would be opened, if part owners can mortgage their shares
and destroy the lien of co-owners or co-partners, for advances
made for the common benefit.

### R. H. STANLEY FOR THE MORTGAGEES.

The mortgages are valid under the statute. There are no *third parties*, as contemplated in Section 1263, before the Court. This is a claim of Spencer & Co., and not of their creditors. Both the owners and the mortgagors had actual notice, and the mortgages would be good between the parties, but for Section 639, providing, "to render the mortgage valid and effectual, it shall be recorded at the Custom House," not at the Registrar's. The statute makes the Custom House the place to learn the title and incumbrances of Hawaiian vessels, and not the Registrar of Conveyances. Mortgages of ships *must* be recorded with the Collector. Another record would be useless. State statutes relative to recording chattel mortgages, do not over-ride United States statutes for recording mortgages of ships. Fontaine *vs.* Beers, 19 Ala., 722; Pars. Mar. Law, 1, 57. Recording at the Registrar's, alone, would be invalid. See Badlam *vs.* Tucker, 1 Pick., 389; Wilson *vs.* McLean, 2 St., 492.

No authority was shown for the lien claimed, on the point of *individual shares*, as contra-distinguished from a mortgage of the whole vessel. The whole vessel was in fact mortgaged, and all the shares are represented here. Even if such were not the case, no share-owner could mortgage anything but his own share, for it can not for a moment be contended that this was a partnership. The agreed facts set up or intimate none. Part owners are clearly liable, in *solido*, for advances on the vessel by another part owner. 1 Pars. Shipping and Adm., 100, *et. seq.*, and Notes. But they have no lien, *as such*, but only when in fact partners. *Ib.*, pp. 107, 108. Mortgagees precede material men not in actual possession. Scio., 1 Adm. and Ecel. Rep., 358.

When the *special* relation of partnership does not exist, there is no lien by partners, according to all the authorities. Larch, 2 Curtis, C. C. R., 427.

A ship's husband, *as such*, has no lien. 1 Pars., Ship. and Adm., p. 112.

HARTWELL, J.: First: Are mortgages recorded with the Collector, and not with the Registrar valid? The statute reads thus: "All mortgages of chattel property * * shall, in order to their validity, be recorded in the office of the Registrar of Conveyances, in default of which, no such instrument shall be binding to the detriment of third parties, or conclusive upon their rights and interests." Section 1263, Civil Code. "It shall be the duty of the Collector General to keep a record of all transfers, by sale or otherwise, and all mortgages or hypothecations, of any Hawaiian registered vessel, or any part thereof; and no such transfer, mortgage, or hypothecation, shall be valid or effectual, unless made by written instrument, nor until such instrument shall have been deposited with said Collector General for record," * * Section 640, *Ib.* "Every transfer of a registered vessel, or any part thereof, duly made and recorded as prescribed in the last preceding section, shall entitle the transferee, being a Hawaiian subject, or otherwise entitled to the right of registry of such vessel, to all the rights and interests of the original registered owner, in respect to such vessel and entry." Section 641, *Ib.* Sections 642 and 643, *Ib.*, provide for recording the discharge of mortgages with the Collector, under penalty of fine, and require the owner to produce before the Collector the certificate of registry within three days, under penalty of seizure and condemnation of the vessel.

It was claimed in behalf of the mortgagees, that the question is between the original parties, inasmuch as the assignees merely represent Spencer & Co., and take the interests of that firm, subject to all legal and equitable claims existing at the date of the assignment. The authorities are uniform, that assignees take the property of a bankrupt subject to the liens legally and *bona fide* existing against him. James' U. S. Bankrupt Law, p. 36, *et seq.*, and cases there cited; Story's Partn., § 361. But these are not proceedings in bankruptcy,

but between the mortgagees and the mortgagor's assignees, who are certainly third parties in the meaning of the statute. By the decision of this Court in Ellis *vs.* White, at the January Term, 1870, actual notice of a chattel mortgage can not supply the want of registry according to law, and the validity of this registry at the Custom House must, therefore, be passed upon in this case. Counsel cited the remarks of Prof. Parsons, in his Treatise on Maritime Law, upon the sufficiency of registry in the Custom House, under an Act of Congress, and not under the State laws; but the question of the constitutionality of our registry laws is not in this case, and it is whether Section 640 is an exception to Section 1263, or more correctly speaking, a part thereof, or is something additional and distinct, requiring a second registry for additional and distinct purposes. We think this case imperatively demands that construction which is contemplated in Sections 11, 12 and 13 of the Civil Code, concerning laws *in pari materia*, the reason and spirit of the law in doubtful cases, and rejecting constructions which lead to an absurdity. This is the doctrine both of the civil and common law, as expressed by the maxim of the Pandects: "*Incivile est nisi tota lege perspecta, una aliqua particula proposita judicare;*" by Coke, that "It is the most natural and genuine exposition of a statute to construe one part of a statute by another part of a statute, for *that* best expresseth the meaning of the makers," Coke, Litt., 387 a. ; by Lord Mansfield, in Rex *vs.* Loxdale, 1 Bur., 447, that statutes on the same subject, "though made at different times, and not referring to each other, shall be taken and *construed together*, as one system, and as explanatory of each other."

The only object of recording with the Registrar is notice ; the Collector's record both gives notice, and fixes the nationality of the vessel, with all the privileges and liabilities consequent thereon. The former is insufficient for either of these purposes, by the express words of the statute, and the

latter is indispensable.    The statute requires the Collector to keep records, and to furnish copies of the record of registry on the owner's application.    Section 639.    Those records are always accessible to parties interested, whether the statute expressly makes them so, or not.    The fact, which is common knowledge here, that mortgages of ships have uniformly been recorded only with the Collector, and that no application was ever made to the Courts, to obtain information thereof, is significant.

Second:    Have Spencer & Co., as ship's husbands and part owners, a lien for their disbursements for the vessel, preceding the mortgagees' claims ?

The statutes of this country make no provision for preferred claims by those furnishing materials, repairs, or supplies.    A maritime lien gives a peculiar privilege over other debts, a right to the property itself, or *jus in re*, and whether it exists by statute or by the general maritime law, it is *stricti juris*, and should receive a construction limited solely to the objects for which it exists.    It is a case under the maxim of the Civilian Paulus,—"*Quæ propter necessitatem recepta sunt non debent in argumentum trahi,*" "necessity justifies no argument beyond the case it has enforced."    See the *Young Mechanic.*    The *Kiersarge*, 2 Curtis, Cir. Court Rep., 404, 421.    Those objects are, to promote the interests of commerce, and that "ships may plow the ocean, and not rot by the wall."    In the bark *George*, our late learned Chief Justice Lee appears to have regarded the doctrine of the civil law which allows liens for supplies on domestic vessels, as in force here.    We are not aware that the law of that case has been doubted in this Court, or that shipping or mercantile interests have suffered any inconvenience therefrom.    But by all the authorities to which we have access, that decision is not applicable to the present case.    The lien of part owners who are also ship's husbands, for their advances, was extended even by Lord Hardwicke only to cases of partner-

Carter and Davies, Assignees, *v.* Bishop & Co. *et al.*, Mortgagees.

ship. We have decided, in Tucker *vs.* Metcalf's executors, that a partnership exists only by virtue of an agreement to that effect between the partners. Persons owning shares in a vessel are *prima facie* part owners, and not partners. The *Larch*, Curt., C. C. Rep., 427. The agreed facts in this case allow us to view the shareholders in no light as partners in single ventures, or in the general business of the ship. Even if we are to regard this as a partnership, the law of England, to-day, is clear, that Lord Hardwicke's decision in Doddington *vs.* Hallet, is indefensible. In the *Larch, ubi supra,* tried before Justices' Curtis and Ware, two of the most eminent admiralty Judges in the United States, the following is the language of the Court, after stating that Doddington *vs.* Hallet, as overruled by Lord Eldon, in ex parte Young, was no longer law in England : "There has been some diversity of decisions in this country ; but I think it has proceeded from diversity in the views taken of the particular facts of the cases, rather than from any real difference in principles. That the owners of a vessel may be co-partners in respect to that as well as any other property, and that when they are so, each has a lien, can not be doubted. But where no such special relation exists, where they are merely part owners, and, as such, tenants in common, that one has no lien on the share of another for advances, I believe to be equally clear. And when this distinction is attended to, the diversity between the cases is much lessened, if it be not entirely removed." An examination of the cases cited leads us to think that the cases are not now as "irreconcilable" as Prof. Parsons, in one part of 'the text of his valuable treatise on Shipping and Admiralty, seems to think

The authorities cited are clearly to the effect that neither a part owner, *as such,* nor a ship's husband, *as such,* has a lien on the shares of the other owners, or on the entire ship for advances. See, also, Flanders on Shipping, § 388. The cases distinguish between the lien on the proceeds of a voyage and on the ship itself.

The shares mortgaged by Spencer & Co. could no longer be *their own security for advances made by themselves*. Babcock's share was also mortgaged, together with that of Spencer & Co., and with their full knowledge. How could they expect his share to pay them for subsequent outlay? Even a lien for repairs must not be allowed to remain unenforced, until *bona fide* purchasers may have reason to think that none exists. Admiralty Courts do not sit to enforce stale claims. To cite again from the Civilians: "Every one must suffer the consequences of his own delay;" "*unicuique mora sua nocet.*" To allow the lien claimed in this case would be going further than ignoring mere *laches*, or neglect: it would open the door to endless difficulties, one of which would be, to destroy the value of mortgage securities.

Although we are not bound by the English and American decisions, to the extent and in the manner that the courts there are governed by them, we have, on that account, no more power to decide arbitrarily.

The case has been fully and ably presented by the learned counsel, but we are compelled, upon full consideration of the authorities, and by fixed principles of law, to disallow the claim of the assignees, and to declare the mortgages to be valid.

Let judgment be entered accordingly, with costs to the mortgagees.